**NORTON ROSE FULBRIGHT US LLP**
MICHELLE L. CARTER (BAR NO. 288081)
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
michelle.carter@nortonrosefulbright.com

Attorneys for Plaintiffs
BLOCK SCIENTIFIC, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLOCK SCIENTIFIC, INC., a New York corporation, <br><br> Plaintiff, <br><br> v. <br><br> TRUE DIAGNOSTICS, INC., a Nevada corporation; SYNTRON BIORESEARCH, INC., a California corporation; and DOES 1-100, inclusive, <br><br> Defendants. | Case No. **'21CV1118 JLS   JLB** <br><br> **COMPLAINT FOR DAMAGES** <br><br> (1) Breach of Contract <br> (2) Intentional Interference with Contractual Relations <br> (3) Intentional Interference with Prospective Economic Relations <br> (4) Negligent Interference with Prospective Economic Relations <br><br> **DEMAND FOR JURY TRIAL** |

DOCUMENT PREPARED ON RECYCLED PAPER

Plaintiff Block Scientific, Inc. alleges as follows:

## PARTIES

1. Plaintiff Block Scientific ("Block Scientific") is a New York corporation with a principal place of business at 22 Sawgrass Drive, Bellport, New York 11713.

2. Defendant True Diagnostics, Inc. ("True Diagnostics") is a Nevada corporation with a principal place of business at 2782 Loker Ave W, Carlsbad, CA 92010.

3. Defendant Syntron Bioresearch Inc. ("Syntron") is a California corporation with a principal place of business at 2774 Loker Avenue W, Carlsbad, CA 92010.

4. Plaintiff is ignorant of the true names and identities of each of the Defendants herein designated as Does 1 through 100, who are therefore sued herein by fictitious names. Plaintiff will seek leave to amend this Complaint to add additional defendants should their true names and identities become known.

5. Defendants are business entities who, on information and belief, are agents of, or acting in concert and active participation with, each other in committing the wrongful acts alleged herein such that each Defendant is fully liable for all the acts and omissions of each of the other Defendants.

## VENUE AND JURISDICTION

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2). True Diagnostics and Syntron reside in this district, and a substantial part of the events and omissions giving rise to Block Scientific's claims occurred in this district.

7. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 and the parties are residents of diverse states. Block Scientific is a resident of New York. True

Diagnostics is a resident of Nevada and California. Syntron is a resident of California.

## FACTUAL ALLEGATIONS

8. Block Scientific supplies high quality laboratory equipment made by the leading manufacturers in the industry. It carries an extensive product range to help clinical laboratories run at peak performance, and serves the equipment needs of many prestigious organizations, hospitals, and educational institutions worldwide. Its range of products includes, for example, blood collection supplies, analyzers for chemistry, coagulation, electrolytes, hematology, immunoassay, point-of-care, urinalysis, histology and cytology equipment, and microbiological systems.

9. True Diagnostics is a research, development, and manufacturing company that specializes in manufacturing advanced rapid in-vitro immunodiagnostic test systems and reagents.

10. Syntron manufacturers point-of-care in vitro diagnostic tests and detection readers. It offers products such as rapid lateral flow immunoassays for fertility, drugs of abuse, allergy, cancer, infection diseases, and thyroid diseases. True Diagnostics and Syntron are collectively referred to herein as "the Suppliers."

11. Block Scientific first engaged in business with the Suppliers in 2016. For the next two years, Block Scientific purchased Drug Test Cups produced by the Suppliers, which Block Scientific then sold to its own customers.

12. In or around March 2020, Block Scientific learned that the Suppliers had developed a serology test to identify IgG and IgM antibodies to SARS-CoV-2 in human serum, plasma, or whole blood, called the "QuikPac II IgG & IgM COVID-19 Test Kit" ("QuikPac Test").

13. In March and April 2020, Block Scientific had numerous conversations with the Suppliers regarding the QuikPac Test, including with respect to its legality, availability, and sensitivity and specificity testing results. The

Suppliers represented that they had and would abide by all requirements set by the United States Food and Drug Administration ("FDA") for serology testing, including obtaining all applicable authorizations and approvals. The Suppliers also represented throughout this period that the QuikPac Test was highly effective and would far exceed a 90% IgG PPA sensitivity and specificity. Indeed, in multiple product insert drafts shared with Block Scientific in March 2020, the Suppliers represented that the QuikPac Test scored IgG PPA sensitivity and specificity well in excess of 90%.

14. In April 2020, Block Scientific and the Suppliers negotiated and executed a Manufacturing Supply Agreement for the Suppliers' manufacturing and sale of QuikPac Tests to Block Scientific. The Agreement stated that Block Scientific wished to purchase QuikPac Tests from the Suppliers, which it would then distribute to its customers in the United States.

15. In executing the Agreement, the Suppliers represented and warranted to Block Scientific that (1) their execution, delivery, and performance of the Agreement would not violate, conflict with, require consent under or result in any breach or default under applicable Law, defined as any statute, law, ordinance, regulation, rule, code, constitution, treaty, common law, Governmental Order or other requirement or rule of law of any Governmental Authority; (2) they were in material compliance with all applicable Laws relating to the Agreement and the QuikPac Tests; and (3) they had obtained all material licenses, authorizations, approvals, consents, or permits required by applicable Laws to conduct their business and to perform their obligations under the Agreement.

16. In the meantime, with the Suppliers' knowledge, Block Scientific entered into multiple contracts with its own customers, Hopco and Meridian ("Customers"), for the sale of QuikPac Tests. On April 11, 2020, Block Scientific entered into a Product Purchase and Order Agreement with Hopco ("Hopco Agreement"), which provided for Hopco's purchase of a substantial number of

QuikPac Tests, with additional orders to be placed by purchase order. On April 13, 2020 and May 4, 2020, Meridian Bioscience placed two significant, high-volume Purchase Orders of QuikPac Tests from Block Scientific ("Meridian Purchase Orders"). Together, the Hopco Agreement and Meridian Purchase Orders ("Customer Contracts") were worth millions of dollars in sales to Block Scientific, with the potential to achieve tens of millions of dollars more in future sales.

17. The Suppliers were well aware of the existence and significance of Block Scientific's Customers Contracts. Indeed, Block Scientific and the Suppliers had multiple calls and written correspondence with both Hopco and Meridian, beginning in April 2020, regarding the parties' commitments and expectations.

18. For example, on April 15, 2020, the principals of Block Scientific, the Suppliers, and Hopco had a conference call to discuss, among other items: (1) ramp up numbers to determine when the first units under the Hopco Agreement would be available; (2) confirmation that the Suppliers had properly submitted a notification for the QuikPac Tests to the FDA; and (3) what ramp up would look like if Hopco ordered millions of additional units. Accordingly, the Suppliers were well aware of Block Scientific's time and product commitments to Hopco, the scope of Hopco's contemplated future orders from Block Scientific, as well as the importance to Hopco of timely product delivery and strict compliance with FDA requirements.

19. The Suppliers also knew about the Meridian Purchase Orders, including Meridian's expectations regarding product delivery and FDA compliance.

20. The Suppliers' conduct in the weeks that followed completely disrupted Block Scientific's contractual relationships with both Hopco and Meridian.

21. First, the Suppliers continuously failed to deliver QuikPac Tests on time, altered production timelines and missed production schedules, and failed to properly communicate delays. These actions caused Block's Customers to cancel deliveries to their own customers—some of which required delivery of tests to

DOCUMENT PREPARED ON RECYCLED PAPER

reopen their clinics and businesses—and resulted in their own loss of customers. Further, Block Scientific and its Customers suffered irreparable reputational harm due to their inability to timely supply product as a result of the Suppliers' failures.

22. Second, in June 2020, Block Scientific and its Customers learned that the Suppliers failed to properly submit the QuikPac Test for Emergency Use Authorization ("EUA"), as required by the FDA to legally market and sell the QuikPac Test in the United States. Instead, the Suppliers claimed that a third-party supplier of components, Tianjin New Bay Bioresearch Co. ("Tianjin"), a Chinese company, had made the EUA submission as Syntron's "sponsor," despite that the FDA required the manufacturer of the applicable serology test to submit the EUA request. The Suppliers assured Block Scientific and its Customers that they would request a name change with the FDA. Upon information and belief, however, a name change request was never made.

23. The Suppliers' failure to properly make the requisite EUA submission was the last straw for Hopco, which informed Block Scientific that the legal, marketing, and business risks associated with the Suppliers' QuikPac Tests had become untenable for a continued business relationship. Accordingly, Hopco cancelled its orders and requested an immediate refund from Block Scientific.

24. Similarly, in June 2020, Meridian directed Block Scientific to, effective immediately, place its Purchase Orders on hold, stating that it needed confirmation regarding the QuikPac Test's EUA status before proceeding further.

25. In July 2020, the Suppliers shared with Block Scientific that the QuikPac Test failed a serology test evaluation, scoring an IgG PPA/sensitivity of only 73.3%, far below the 90% required for FDA EUA and repeatedly guaranteed by the Suppliers. Accordingly, the Suppliers immediately withdrew the QuikPac Tests from distribution.

26. As a result of the Suppliers' actions, including its failure to obtain EUA status, Meridian cancelled its orders and requested a full refund from Block Scientific.

27. While Block Scientific worked in good faith with its Customers and issued them full and timely refunds, the Suppliers have refused to do the same with respect to Block Scientific. Despite months of good faith attempts by Block Scientific to resolve this matter informally, court intervention is now required.

## FIRST CAUSE OF ACTION

**(Breach of Contract – Against All Defendants)**

28. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 27, as though fully set forth herein.

29. On April 15, 2020, Block Scientific and the Suppliers entered into a Manufacturing Supply Agreement ("Agreement").

30. Block Scientific has performed all of its obligations under the contract.

31. In executing the Agreement, the Suppliers represented and warranted to Block Scientific that (1) their execution, delivery, and performance of the Agreement would not violate, conflict with, require consent under or result in any breach or default under applicable Law, defined as any statute, law, ordinance, regulation, rule, code, constitution, treaty, common law, Governmental Order or other requirement or rule of law of any Governmental Authority; (2) they were in material compliance with all applicable Laws relating to the Agreement and the QuikPac Tests; and (3) they had obtained all material licenses, authorizations, approvals, consents, or permits required by applicable Laws to conduct their business and to perform their obligations under the Agreement. The Agreement also required the Suppliers to use commercially reasonable efforts to deliver all QuikPac Tests before their expected delivery date.

32. The FDA required all commercial manufacturers of COVID-19 serological tests—like the QuikPac Test—to submit EUA requests for their

products. Nevertheless, neither True Diagnostics nor Syntron submitted an EUA request for the QuikPac Test; instead, they claimed that a third-party supplier of components for the product, Tianjin New Bay Bioresearch Co. ("Tianjin"), a Chinese company, had made the EUA submission as Syntron's "sponsor." The Suppliers assured Block Scientific and its Customers that they would request a name change with the FDA. Upon information and belief, however, a name change request was never made.

33. Moreover, in order to obtain EUA, the FDA required that serology tests achieve an IgG PPA/sensitivity of 90%. Although the Suppliers repeatedly guaranteed to Block Scientific that the QuikPac Test exceeded this sensitivity, in July 2020, the Suppliers notified Block Scientific that the QuikPac Test IgG PPA/sensitivity scored an IgG PPA/sensitivity of only 73.3%. Accordingly, the QuikPac Test stood no chance of obtaining EUA even had it been properly submitted, and the Suppliers withdrew it from distribution.

34. The Suppliers breached their representations and warranties in the Agreement by (1) failing to properly submit the QuikPac Test for EUA or request a name change with the FDA, such that their delivery and performance of the Agreement violated and conflicted with FDA requirements, and they were not in material compliance with applicable laws relating to the Agreement and the QuikPac Tests; and (2) failing to attain EUA for the QuikPac Tests, such that they did not obtain all material authorizations, approvals, and consents required to perform their obligations under the Agreement. The Suppliers further breached the Agreement by failing to use commercially reasonable efforts to timely deliver QuikPac Tests to Block Scientific and its Customers.

35. As a direct and proximate result of the Suppliers' actions, Block Scientific has suffered injuries and damages in excess of the jurisdictional limit of this Court in an amount to be ascertained at trial.

## SECOND CAUSE OF ACTION

**(Intentional Interference with Contractual Relations – Against All Defendants)**

36. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 27, as though fully set forth herein.

37. With the Suppliers' knowledge, Block Scientific entered into multiple contracts with customers for the sale of QuikPac Tests. On April 11, 2020, Block Scientific entered into a Product Purchase and Order Agreement with its customer, Hopco ("Hopco Agreement"), which provided for Hopco's purchase of a substantial number of QuikPac Tests, with additional orders to be placed by purchase order. On April 13, 2020 and May 4, 2020, Meridian Bioscience placed two significant, high-volume Purchase Orders of QuikPac Tests from Block Scientific ("Meridian Purchase Orders"). Together, the Hopco Agreement and Meridian Purchase Orders ("Customer Contracts") were worth millions of dollars in sales to Block Scientific, with the potential to achieve tens of millions of dollars more in future sales.

38. The Suppliers are not parties to the Customer Contracts.

39. The Suppliers were well aware of the existence and significance of Block Scientific's Customers Contracts. Indeed, Block Scientific and the Suppliers had multiple calls and written correspondence with both Hopco and Meridian, beginning in April 2020, regarding the parties' commitments and expectations.

40. The Suppliers' actions as alleged herein were designed to induce a breach or disruption of Block Scientific's Customer Contracts. Indeed, it was substantially certain, and the Suppliers knew, that the Suppliers' alteration of production timelines and production schedules, failure to timely deliver products and properly communicate delays, failure to properly submit the QuikPac Test for EUA or request a name change with the FDA, and failure to obtain EUA for the QuikPac Test, would necessarily disrupt Block Scientific's Customer Contracts.

41. Block Scientific's Customer Contracts were disrupted as a result of the Suppliers' interference. Indeed, both Customers cancelled their orders and demanded immediate refunds of monies paid to Block Scientific as a result of the Suppliers' actions.

42. As a direct and proximate result of True Diagnostics and Syntron's actions, Block Scientific has suffered injuries and damages in excess of the jurisdictional limit of this Court in an amount to be ascertained at trial.

43. When committing the actions alleged herein, True Diagnostics and Syntron acted with oppression, fraud, and malice, and in conscious disregard of Block Scientific's rights, for which Block Scientific is entitled to an award of punitive and exemplary damages.

## THIRD CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Relations – Against All Defendants)

44. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 27, as though fully set forth herein.

45. With the Suppliers' knowledge, Block Scientific entered into multiple contracts with customers for the sale of QuikPac Tests. On April 11, 2020, Block Scientific entered into a Product Purchase and Order Agreement with its customer, Hopco ("Hopco Agreement"), which provided for Hopco's purchase of a substantial number of QuikPac Tests, with additional orders to be placed by purchase order. On April 13, 2020 and May 4, 2020, Meridian Bioscience placed two significant, high-volume Purchase Orders of QuikPac Tests from Block Scientific ("Meridian Purchase Orders"). Together, the Hopco Agreement and Meridian Purchase Orders ("Customer Contracts") were worth millions of dollars in sales to Block Scientific, with the potential to achieve tens of millions of dollars more in future sales.

46. The Suppliers are not parties to the Customer Contracts.

DOCUMENT PREPARED ON RECYCLED PAPER

47. The Suppliers were well aware of the existence and significance of Block Scientific's Customers Contracts. Indeed, Block Scientific and the Suppliers had multiple calls and written correspondence with both Hopco and Meridian, beginning in April 2020, regarding the parties' commitments and expectations.

48. The Suppliers' actions as alleged herein were designed to induce a breach or disruption of Block Scientific's Customer Contracts. Indeed, it was substantially certain, and the Suppliers knew, that the Suppliers' failure to properly submit the QuikPac Test for EUA or request a name change with the FDA, and failure to obtain EUA for the QuikPac Test, would necessarily disrupt Block Scientific's Customer Contracts. The Suppliers' failure to abide by all FDA requirements was independently wrongful.

49. Block Scientific's Customer Contracts were disrupted as a result of the Suppliers' interference. Indeed, both Customers cancelled their orders and demanded immediate refunds of monies paid to Block Scientific as a result of the Suppliers' actions. It was reasonably probable that the relationship between Block Scientific and its Customers would have yielded additional economic benefits, had it not been derailed by the Suppliers' interference.

50. As a direct and proximate result of True Diagnostics and Syntron's actions, Block Scientific has suffered injuries and damages in excess of the jurisdictional limit of this Court in an amount to be ascertained at trial.

51. When committing the actions alleged herein, True Diagnostics and Syntron acted with oppression, fraud, and malice, and in conscious disregard of Block Scientific's rights, for which Block Scientific is entitled to an award of punitive and exemplary damages.

## FOURTH CAUSE OF ACTION

**(Negligent Interference with Prospective Economic Relations – Against All Defendants)**

DOCUMENT PREPARED ON RECYCLED PAPER

52. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 27, as though fully set forth herein.

53. With the Suppliers' knowledge, Block Scientific entered into multiple contracts with customers for the sale of QuikPac Tests. On April 11, 2020, Block Scientific entered into a Product Purchase and Order Agreement with its customer, Hopco ("Hopco Agreement"), which provided for Hopco's purchase of a substantial number of QuikPac Tests, with additional orders to be placed by purchase order. On April 13, 2020 and May 4, 2020, Meridian Bioscience placed two significant, high-volume Purchase Orders of QuikPac Tests from Block Scientific ("Meridian Purchase Orders"). Together, the Hopco Agreement and Meridian Purchase Orders ("Customer Contracts") were worth millions of dollars in sales to Block Scientific, with the potential to achieve tens of millions of dollars more in future sales.

54. The Suppliers are not parties to the Customer Contracts.

55. The Suppliers were well aware of the existence and significance of Block Scientific's Customers Contracts. Indeed, Block Scientific and the Suppliers had multiple calls and written correspondence with both Hopco and Meridian, beginning in April 2020, regarding the parties' commitments and expectations.

56. The Suppliers owed Block Scientific a duty of care, and breached that duty by altering production timelines and production schedules, failing to timely deliver products and properly communicate delays, failing to properly submit the QuikPac Test for EUA or submitting a name change with the FDA, and failing to obtain EUA for the QuikPac Test. The Suppliers were aware that if they did not act with due care, their actions would interfere with Block Scientific's relationships with its Customers and cause Block Scientific to lose, in whole or in part, the probable future economic benefit or advantage of the relationships.

57. Block Scientific's Customer Contracts were disrupted as a result of the Suppliers' interference. Indeed, both Customers cancelled their orders and

COMPLAINT

demanded immediate refunds of monies paid to Block Scientific as a result of the Suppliers' actions, and Block Scientific lost all of the economic benefits reasonably expected from these relationships.

58. As a direct and proximate result of True Diagnostics and Syntron's actions, Block Scientific has suffered injuries and damages in excess of the jurisdictional limit of this Court in an amount to be ascertained at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment as follows:

1. For compensatory damages in an amount to be determined at trial according to proof;

2. For punitive and exemplary damages in an amount to be determined at trial according to proof;

3. For pre-judgment and post-judgment interest;

4. For costs of suit incurred;

5. For reasonable attorneys' fees; and

6. For such other relief as the Court may deem proper and just.

Dated:   June 15, 2021        **NORTON ROSE FULBRIGHT US LLP**
                              MICHELLE L. CARTER


                              By /s/ Michelle L. Carter
                                 MICHELLE L. CARTER
                                 Attorneys for Plaintiffs
                                 BLOCK SCIENTIFIC, INC.
                                 michelle.carter@nortonrosefulbright.com

DOCUMENT PREPARED ON RECYCLED PAPER