**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BLOCK SCIENTIFIC, INC.,<br><br>                                  Plaintiff,<br><br>v.<br><br>TRUE DIAGNOSTICS, INC.,<br>SYNTRON BIORESEARCH, INC., et al.,<br><br>                                Defendants. | Case No.: 3:21-cv-01118-RBM-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[Doc. 22]** |

On April 1, 2022, Syntron Bioresearch, Inc. ("Syntron") and True Diagnostics, Inc. ("True Diagnostics") (collectively the "Suppliers" or "Defendants") filed a motion to dismiss portions of the first amended complaint ("FAC") filed by Plaintiff Block Scientific, Inc. ("Plaintiff"). (Doc. 22 ("MTD").) Plaintiff filed its opposition to the MTD on April 28, 2022. (Doc. 25 ("Opp.").) Defendants filed a response in support of their MTD on May 5, 2022. (Doc. 28 ("Reply").) The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (Doc. 24.)

For the reasons discussed below, the MTD is **GRANTED IN PART AND DENIED IN PART**.

### I.     BACKGROUND

Syntron and True Diagnostics are "the purported suppliers of an alleged COVID-19

antibody testing kit known as the 'QuikPac II IgG & IgM COVID-19 Test Kit' (the 'QuikPac Test'), through their respective agents, Jerry Lee and Arjang Amini." (Doc. 19, First Amended Complaint ("FAC") ¶ 2.)  Plaintiff asserts that in March 2020, Plaintiff learned that the Suppliers "had purportedly developed a serology test to identify IgG and IgM antibodies to SARS-CoV-2 in human serum, plasma, or whole blood, called the QuikPac Test." (*Id*. ¶ 31.)

Plaintiff and the Suppliers had numerous conversations about the QuikPac Test in March and April 2020, "including with respect to its legality, availability, and sensitivity and specificity testing results." (*Id*. ¶ 32.) Plaintiff claims the Suppliers represented during these conversations that they would abide by all requirements set by the United States Food and Drug Administration ("FDA") for serology testing, including obtaining all applicable authorizations and approvals. (*Id*. ¶¶ 32–33.) Additionally, Plaintiff alleges the Suppliers represented "the QuikPac Test was highly effective and would exceed the minimum sensitivity and specificity required by the FDA," including in product inserts provided to Plaintiff in which the Suppliers "represented that the QuikPac Test scored IgG PPA sensitivity and specificity rates well in excess of 90%." (*Id*. ¶ 33.)

On April 15, 2020, Plaintiff and the Suppliers executed a Manufacturing Supply Agreement (the "Agreement")[1] for the manufacture and sale of QuikPac Tests, which Plaintiff planned to distribute to its customers in the United States. (*Id*. ¶ 34.) "In accordance with the Agreement and its customers' purchase orders, Block Scientific tendered $2,028,695.00 to Syntron." (*Id*. ¶ 35.) Plaintiff alleges it was fraudulently induced to enter the Agreement due to two of the Suppliers' allegedly misleading or fraudulent statements: "(1) that the QuikPac Test was manufactured by Syntron in its Carlsbad, California facility; and (2) that Syntron submitted a Premarket Notification to the FDA and that the FDA's device listing website would show Syntron as the

---

[1] The Manufacturing Supply Agreement is attached to Plaintiff's FAC as Exhibit A. (*See* Doc. 19 at 21.)

manufacturer of the QuikPac Test." (*Id*. ¶ 36.)

Plaintiff alleges that, in reliance on the parties' Agreement and the Suppliers' fraudulent assurances, Plaintiff entered contracts with two of its own customers, Meridian Bioscience, Inc. ("Meridian") and Hopco for the sale of QuikPac Tests. (*Id*. ¶ 54.) Plaintiff's agreements with Meridian and Hopco were collectively worth millions of dollars in sales to Plaintiff, and included the potential for tens of millions of dollars more in future sales. (*Id*. ¶ 57.) Plaintiff alleges the Suppliers "were well aware of the existence and significance of" Plaintiff's contracts with Meridian and Hopco because Plaintiff and the Suppliers "had multiple telephonic and written communications with Hopco and Meridian, beginning in April 2020, regarding the parties' respective commitments and expectations." (*Id*. ¶ 58.)

Plaintiff alleges the Suppliers' conduct disrupted its contracts with Meridian and Hopco. First, "Defendants continuously failed to deliver the QuikPac Tests on time, altered production timelines and missed production schedules, and failed to properly communicate delays." (*Id*. ¶ 62.) Additionally, "in June 2020, Block Scientific learned that Defendants failed to properly submit a Premarket Notification to the FDA for the QuikPac Tests by failing to list Syntron as the manufacturer of the QuikPac Tests on the FDA's website." (*Id*. ¶ 64.) Plaintiff alleges that, upon learning the Suppliers failed to properly submit the Premarket Notification, both Hopco and Meridian cancelled their contracts with Plaintiff and requested refunds, which Plaintiff timely issued. (*Id*. ¶¶ 65–69.) The Suppliers also informed Plaintiff in July 2020 "that the QuikPac Test failed a serology test evaluation, scoring an IgG PPA/sensitivity rate of only 73.3%, far below the minimum sensitivity and specificity required by the FDA." (*Id*. ¶ 67.) At this point, the QuikPac Tests were immediately withdrawn from the market. (*Id*.)

On June 15, 2021, Plaintiff filed suit for breach of contract, intentional interference with contractual relations, intentional interference with prospective economic relations, and negligent interference with prospective economic relations against Syntron and True Diagnostics. (*See generally* Doc. 1.) On August 17, 2021, Syntron and True Diagnostics

filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 7.) The Honorable Janis L. Sammartino granted in part and denied in part the motion on February 16, 2022. (*See* Doc. 15.) Specifically, Judge Sammartino dismissed without prejudice Plaintiff's claims for intentional interference with contractual relations, intentional interference with prospective economic relations claims, and negligent interference with prospective economic relations. (*Id*.) Judge Sammartino also dismissed Plaintiff's breach of contract claim without prejudice to the extent that claim was based on Syntron's and True Diagnostics' purported failure to timely deliver the QuikPac Tests or properly submit the QuikPac Test for emergency use authorization to the FDA, but denied the motion to dismiss the breach of contract claim as to Plaintiff's allegations that the QuikPac Test was less effective than Syntron and True Diagnostics represented, which led to the Suppliers' failure to obtain Emergency Use Authorization for the QuikPac Test. (*See id*. at 6–12, 19–20.) Plaintiff was granted leave to file an amended complaint within 30 days of the Court's order, which it did on March 18, 2022. (Doc. 19.)

Plaintiff added two defendants in its FAC: Jerry Lee ("Lee"), the founder and Chief Executive Officer of True Diagnostics, and Arjang Amini ("Amini"), the Quality Assurance Manager of Syntron. (FAC ¶¶ 19–20.) The FAC alleges four causes of action: (1) breach of contract against True Diagnostics and Syntron; (2) money had and received against True Diagnostics and Syntron; (3) fraudulent inducement against all defendants; and (4) rescission against True Diagnostics and Syntron. (*Id*. ¶¶ 76–105.) The Suppliers filed the instant MTD on April 1, 2022, seeking dismissal of Plaintiff's claims for breach of contract, money had and received, and rescission. (MTD at 2.)[2] This action was transferred to the undersigned on April 7, 2022. (Doc. 23.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may move to

---

[2] True Diagnostics and Syntron do not seek dismissal of Plaintiff's third claim for fraudulent inducement. (*See* MTD at 2.)

4

dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  At the motion to dismiss stage, all material factual allegations in the complaint are accepted as true and are construed in the light most favorable to the non-moving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  "A complaint should not be dismissed unless a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (citation omitted).

To avoid dismissal under Rule 12(b)(6), a complaint need not contain detailed factual allegations; rather, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.   DISCUSSION

The Suppliers seek dismissal of Plaintiff's claims for breach of contract, money had and received, and rescission.  The Court will consider each claim in turn.

**A. Breach of Contract**

Plaintiff's first cause of action alleges breach of contract. (FAC ¶¶ 76–83.)  "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2)

plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (citation omitted). Plaintiff adequately alleges the existence of a contract (FAC ¶ 34) and performance (*id*. ¶ 35). The parties dispute, however, whether the FAC sufficiently alleges a breach.

In the FAC, Plaintiff alleges the Suppliers breached Section 8.3 of the Agreement, which required the Suppliers to manufacture the QuikPac Tests "in compliance with the specifications . . . set forth in Schedule 2." (Agreement § 8.3; FAC ¶ 12.) Plaintiff alleges the Suppliers represented in Schedule 2 "that, among other things, the overall test sensitivity of the QuikPac Tests was 89.4% and specificity/negative percent agreement was 97.7%." (FAC ¶ 13.) However, Schedule 2 is blank. (*See id*. at 50.) Plaintiff nevertheless alleges Exhibit B to the FAC, a product insert labeled "QuikPac II™ Coronavirus (COVID-19) IgG & IgM Test Catalog No. 29000 INSTRUCTIONS," is Schedule 2 to the Agreement. (*Id*. at 53 ("Product Insert").) Plaintiff alleges the Suppliers breached "the Agreement by failing to satisfy both the sensitivity and specificity criteria specified in Schedule 2." (*Id*. ¶ 14; *see also id*. ¶¶ 76–83.)

The Suppliers' main argument in support of their motion to dismiss Plaintiff's breach of contract claim is that Plaintiff has not alleged that the Product Insert was in fact attached to the Agreement as Schedule 2. (MTD at 15 ("Block does not allege any facts that Exhibit B was actually attached to the Supply Agreement as Schedule 2, or that the parties intended, but neglected, to do so.").) The Suppliers argue (i) nothing in the Product Insert refers to Schedule 2 and (ii) the FAC ignores entirely that Schedule 2 itself is blank. (*Id*. at 16–17.) Finally, the Suppliers argue Plaintiff's allegation that the Product Insert was intended as Schedule 2 is implausible on its face and should be rejected by the Court at the motion to dismiss stage. (*Id*. at 17.) In its opposition, Plaintiff argues "[i]t is clear that Exhibit B is incorporated into the Agreement and must be read in conjunction with paragraph 8.3 whereby Syntron agreed to comply with the specifications for the QuikPac Tests." (Opp. at 12.) Plaintiff also argues the Court must accept these allegations as true at the motion

to dismiss stage. (*Id*. at 12–13.)

At the outset, the Court notes it may properly consider the Product Insert at the motion to dismiss stage because it was attached to Plaintiff's FAC. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[A] court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment.") (citation and internal quotation marks omitted). The Suppliers admit the same in their briefing. (*See* Reply at 6 ("[Product Insert] is properly considered on this Motion because it is an exhibit to the FAC").)

Accepting all material factual allegations in the FAC as true and construing those facts in the light most favorable to Plaintiff, as the Court must do at the motion to dismiss stage, *Cahill*, 80 F.3d at 337–38, the Court finds Plaintiff has sufficiently stated a claim for breach of contract. Plaintiff alleges the Suppliers breached the Agreement "by failing to satisfy both sensitivity and specificity requirements for the QuikPac Tests as set forth in Schedule 2," and that the Suppliers represented the overall test sensitivity of the QuikPac Tests was 89.4% and specificity/negative percent agreement was 97.7% in the Product Insert, which was Schedule 2. (FAC ¶¶ 13, 81.) Accepting those allegations as true, Plaintiff has sufficiently stated a breach of contract based on the QuikPac Test later failing a serology test evaluation and scoring an IgG PPA/sensitivity rate of only 73.3%." (*Id.* ¶ 82.) The Suppliers cite no case law in support of their motion to dismiss Plaintiff's breach of contract claim, arguing only that "[t]he Court can and should reject implausible allegations [regarding Schedule 2] on a motion to dismiss." (MTD at 17.) The Suppliers have not satisfied their burden of proving dismissal is appropriate at this stage of litigation. *See Twombly*, 550 U.S. at 570 (plaintiff must plead "enough facts to state a claim to relief that is plausible on its face").[3]

---

[3] In their Reply, the Suppliers argue the Court should strike the Declaration of Jeremy Linder (Doc. 25-1) filed with Plaintiff's opposition to the MTD, which the Court will construe as a motion to strike. (Reply at 3–4.) "As a general rule, a district court may not

Accordingly, the Court **DENIES** the Suppliers' motion to dismiss Plaintiff's breach of contract claim.

### B. Money Had and Received

The Suppliers seek dismissal of Plaintiff's second cause of action for money had and received, which alleges the Suppliers "became indebted to Block Scientific in the amount of $2,028,695.00 for money obtained by True Diagnostics and Syntron pursuant to the Agreement." (FAC ¶ 85.) Plaintiff further alleges "[n]either the whole nor any part of the amount due has been repaid, although payment has been demanded, leaving the balance due, owing and unpaid to Block Scientific in the amount of $2,028,695.00 plus interest at the legal rate from and after July 17, 2020." (*Id.* ¶ 86.)

"The count for money had and received states in substance that the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." *Scheibe v. Freeman*, No. 10-cv-01496-H-WMC, 2010 WL 11684791, at *4 (S.D. Cal. Sept. 27, 2010) (internal quotation marks and citations omitted). "The elements are as follows: (1) defendant received money; (2) the money defendant received was for plaintiff's use; and (3) defendant is indebted to plaintiff." *Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1190 (C.D. Cal. 2017) (citation omitted).

The Suppliers argue Plaintiff's money had and received claim fails as a matter of law because "Block has neither identified any monies received by Suppliers for Block's

---

consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation and internal quotation marks omitted). "There are only a few limited exceptions to this rule. A court may consider: (1) documents attached to the complaint; (2) documents incorporated by reference in the complaint; and (3) matter that is judicially noticeable under Federal Rule of Evidence 201." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012) (citing *United States v. Ritchie*, 342 F.3d 903, 907–908 (9th Cir. 2003)). The Linder Declaration does not fall into any of these categories and accordingly cannot be considered by the Court for purposes of ruling on the instant motion. *Id*. Accordingly, the Court **STRIKES** the Linder Declaration (Doc. 25-1).

benefit nor explained why it may proceed on this claim despite the existence of an express contract governing the relationship between the Parties." (MTD at 18–19.) More specifically, the Suppliers argue (i) the money Block paid to the Suppliers was compensation under the Agreement for the *Suppliers'* benefit, not Plaintiff's benefit and (ii) a cause of action for money had and received cannot lie where, as here, the plaintiff admits the monies in question were paid pursuant to an express contract. (*Id*. at 19–20.) Plaintiff argues in its opposition that a cause of action for money had and received can lie where the money was obtained by false and fraudulent representations, regardless of any contractual agreement between the parties. (Opp. at 13.) Plaintiff further argues the money paid to the Suppliers was for the Plaintiff's benefit, because it used that money to purchase the QuikPac Tests. (*Id*. at 14.)

The Court agrees that Plaintiff's cause of action for money had and received fails because there is an express written contract governing the relationship between the parties. *See Kouball v. SeaWorld Parks & Ent., Inc.*, No. 20-CV-870-CAB-BGS, 2020 WL 5408918, at *6 (S.D. Cal. Sept. 9, 2020), *aff'd*, No. 20-56069, 2021 WL 4947877 (9th Cir. Oct. 25, 2021); *Coldwell Banker Real Est. LLC v. New All. Properties, Inc.*, No. CV1701505BROSKX, 2017 WL 5635023, at *4–5 (C.D. Cal. June 15, 2017). "An action for money had and received is based on the existence of a quasi-contract," and "[a]n action in quasi-contract . . . does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Kouball*, 2020 WL 5408918, at *6 (quoting *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)). "While there are exceptions to this rule, they apply only when a plaintiff, for reasons independent of the contract with defendant, has a remedy in quasi-contract." *Friedman v. U.S. Bank Nat'l Ass'n*, No. CV16-2265-CAS(FFMX), 2016 WL 3226005, at *8 (C.D. Cal. June 6, 2016) (citations omitted).

Here, Plaintiff does not allege a quasi-contractual theory, nor has Plaintiff shown any "reasons independent of the contract" such that an exception to this general rule applies. *Id*. Indeed, Plaintiff's money had and received claim arises from the same facts as its breach of contract claim and is premised on the $2,028,695.00 "obtained by True

Diagnostics and Syntron *pursuant to the Agreement*." (FAC ¶ 85 (emphasis added).)

Plaintiff cites *Calhoun v. Davis*, 262 P.2d 620 (Cal. Ct. App. 1953) for the proposition that "where one person obtains money from another by false and fraudulent representations an action under the common count for money had and received will lie to recover such sums." Plaintiff is correct that, under California law, "[i]n some instances fraud may be proved under a common count for money had and received." *Lloyd v. Williams*, 38 Cal. Rptr. 849, 851 (Cal. Ct. App. 1964) (citations omitted). But as the court explained in *Lloyd*, "[u]ntil an express contract is avoided, an implied contract, essential to an action on a common count cannot arise, and it necessarily follows that until an express contract is avoided an action on an implied contract cannot be maintained." *Id*. (citations omitted). Plaintiff has not alleged the express contract between the parties is void; rather, Plaintiff's claim for money had and received instead relies expressly on money paid by Plaintiff to the Supplies "pursuant to the Agreement." (FAC ¶ 85; *see also* Opp. at 13–14 (discussing tender of money pursuant to parties' written Agreement).)

Accordingly, any amendment to this claim would be futile, and Plaintiff's claim for money had and received is **DISMISSED** with prejudice.[4]

### C. Rescission

Plaintiff's fourth cause of action alleges "Block Scientific is entitled to rescission of the Agreement so that Block Scientific can be restored to the point it was in financially before the Agreement was entered into with True Diagnostics and Syntron." (FAC ¶ 105.) The Suppliers argue this claim fails as a matter of law because rescission is a remedy, not

---

[4] Not only has Plaintiff failed to allege a quasi-contractual theory, but Plaintiff has also failed to allege that "the money defendant received was for plaintiff's use." *Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1190 (C.D. Cal. 2017) (citation omitted). The $2,028,695.00 paid to the Suppliers "pursuant to the Agreement," FAC ¶ 85, was consideration paid pursuant to the parties' contract. Accordingly, the purpose of the consideration was for the benefit of the Suppliers, not the Plaintiff. *See Al Owaidah v. Mazzei*, No. EDCV 18-246-KK, 2020 WL 1041091, at *17 (C.D. Cal. Jan. 27, 2020).

a cause of action. (MTD at 20.) Plaintiff argues in its opposition that it "has indisputably alleged the requisite elements of fraud in the inducement" and therefore "has met the requirements of heightened specificity for pleading rescission based on fraud." (Opp. at 16.)

The Suppliers are correct that "[r]escission is not a cause of action, but a common-law remedy on the contract." *Direct Techs., LLC v. Elec. Arts, Inc.*, 525 F. App'x 560, 562 (9th Cir. 2013) (citation omitted); *see also In re Outlaw Lab'y, LP Litig.*, No. 18-CV-840-GPC-BGS, 2020 WL 1953584, at *12 (S.D. Cal. Apr. 23, 2020), *reconsideration denied*, No. 18-CV-840-GPC-BGS, 2020 WL 3469387 (S.D. Cal. June 25, 2020) ("rescission is a remedy, not a cause of action"); *Nakash v. Superior Ct.*, 241 Cal. Rptr. 578, 584 (Cal. Ct. App. 1987) ("Rescission is not a cause of action; it is a remedy."). Because rescission is not a proper cause of action, any amendment to this claim would be futile. Accordingly, Plaintiff's rescission claim is **DISMISSED** with prejudice.

### IV.   CONCLUSION

For the reasons discussed above, the MTD (Doc. 22) is **GRANTED IN PART AND DENIED IN PART**. The MTD is **GRANTED** with respect to Plaintiff's claims for money had and received and rescission, which are dismissed **WITH PREJUDICE**. The MTD is **DENIED** with respect to Plaintiff's claim for breach of contract. The Court **ORDERS** all Defendants to file an answer to the FAC within 30 days from the date this Order is filed.

**IT IS SO ORDERED.**

DATE: January 3, 2023

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE